**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| In re:<br>MOTORCYCLES OF MANCHESTER, INC., *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 26-10989-KB<br>(Jointly Administered) |

**DEBTORS' MOTION ON SHORTENED NOTICE FOR: (I) ENTRY OF ORDER APPROVING BID PROCEDURES AND RELATED RELIEF; AND (II) ENTRY OF ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

**This Motion includes a request to have the relief sought in the Motion heard on shortened notice in relation to the bid procedures relief only pursuant to Local Rule 9013-1(e), with a proposed hearing regarding bid procedures only on December 2, 2026 at 10:00 a.m. or as soon thereafter as the court can accommodate. A statement of the facts and circumstances justifying expedited determination, as required by Local Rule 9013-1(e), is included herein.**

Motorcycles of Manchester, Inc. ("**MOMS**"), Wheel Freedom, LLC, MOMS Northampton, LLC and MOMS Middlesex, LLC, the above-captioned debtors and debtors-in-possession (the "**Debtors**"), with the consent of MutualOne Bank ("**M1**"), move this Court (the "**Motion**"), pursuant to, inter alia, §§ 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 6004, 6006, 9007, 9008, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rule 9013-1of the Local Rules of the Bankruptcy Court for the District of New Hampshire (the "**Local Rules**"), for the entry of the following:

(i) an order, substantially in the form attached as **Exhibit A** (the "**Bid Procedures**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Motorcycles of Manchester, Inc. (8862); Wheel Freedom LLC (8191); MOMS Middlesex LLC (2818); and MOMS Northampton, LLC (1473). The Debtors' mailing address is 98 Willow Street, Manchester, New Hampshire 03103.

**Order**"): (a) approving procedures in connection with the potential sale of substantially all of the assets of the Debtors (the procedures reflected in the Bid Procedures Order and herein, attached as **Exhibit B**, the "**Bid Procedures**"); (b) scheduling the hearing to consider approval of the sale; (c) approving the form and manner of notice thereof; (d) approving procedures relating to the assumption and assignment of certain executory contracts and unexpired leases, including franchise agreements; and (e) granting related relief; and

(ii) an order (the "**Sale Order**"), following the Sale Hearing (defined below): (a) approving the sale of the Debtors' Assets (defined below) free and clear of all liens, claims, encumbrances, and other interests (except assumed liabilities and permitted liens, if any); (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto, including franchise agreements (if any); and (c) granting related relief.

In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the District of New Hampshire (the "**District Court**") has original, but not exclusive, jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157 and Rule 77.4(a) of the District Court's local rules, the District Court has authority to refer and has referred this proceeding to this Court.

2. This is a core proceeding under 28 U.S.C. § 157(b).

3. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for relief requested herein are sections 105(a), 363, 365, 503, and 507 of Title 11 of the Bankruptcy Code; Rules 2002, 6004, 6006, 9007, 9008, 9013, and 9014 of the Bankruptcy Rules; and Local Rule 9013-1.

## BACKGROUND

### A. The Chapter 11 Cases

5. On October 30, 2026 (the "**Petition Date**"), the Debtors each commenced a chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this

Court.

6. The Debtors continue to operate their businesses and manage their assets as debtors and debtors-in-possession pursuant to §§ 1007(a) and 1108 of the Bankruptcy Code.

7. To date, no operating trustee, examiner, or statutory committee has been appointed in any of the Debtors' cases by the Office of the United States Trustee.

8. On November 6, 2026, the Debtors filed a *Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Post-Petition Replacement Liens as Adequate Protection, and (C) Scheduling a Final Hearing* (Shortened Notice) [Doc. No. 21] (the "**Cash Collateral Motion**"). The Court entered on November 13, 2026 an *Interim Order Authorizing the Use of Cash Collateral to Pay Certain Non-Insider Employee Compensation and Benefits* [Doc. No. 86]. A continued hearing on the Cash Collateral Motion was last scheduled for November 18, 2026. On November 19, 2026, the Court entered *Interim Order: (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Granting Related Relief* [Doc. No. 104].

9. On November 19, 2026, the Debtors filed *Debtors Motion for: (A) Entry of an Interim and Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to § 364 of the Bankruptcy Code; (II) Authorizing the Use of DIP Loan Proceeds; and (III) Granting Junior Liens and Super-Priority Claims; and (B) Setting Expedited Interim Hearing and Approving Shortened Objection Deadline* [Doc. No. 99] (the "**DIP Financing Motion**"). A hearing is currently scheduled for November 24, 2026 on the DIP Financing Motion.

10. The Debtors incorporate by reference the factual background discussed in the Cash Collateral Motion and the *Affidavit of Joel H. Wheeler, Jr. In Support of the Chapter 11 Petitions* filed by the Debtors on November 5, 2026 [Doc. No. 17].

**B. The Debtors' Assets and Secured Creditors**

11. The Debtors own and operate a number of powersports stores with locations in New Hampshire, Connecticut, Massachusetts and Maine (the "**Powersports Locations**"). There are a total of eight (8) Powersports Locations and, in the aggregate, the Powersports Locations have generated approximately $85 million a year in gross revenue.

12. In addition to the Debtors, there are a number of non-debtor affiliated companies (the "**Non-Debtor Affiliates**"). Generally Speaking, the Non-Debtor Affiliates own the real property where the Powersports Locations operate. The Non-Debtor Affiliates are not subject to the jurisdiction of this Court and are not seeking authority to sell their assets through this Motion or obtain the protections granted by the Sale Order if entered. The Non-Debtor Assets (defined below) are being included in the sale process generally in order to allow potential buyers the opportunity to purchase the assets needed to operate the businesses with little interruption.

13. As of the Petition Date, the Debtors financed certain new-unit inventory through floorplan funding facilities with original equipment manufacturers (OEMs) affiliated finance companies and third party floorplan lenders (collectively, the "**Floorplan Lenders**").

14. As of the date of this Motion, the Debtors' Assets are as follows, including known liens against the assets by the Floorplan Lenders, and other secured creditors ("**Other Secured Creditors**", collectively with the Floorplan Lenders, the "**Prepetition Lienholders**").[2] (the assets of the Debtors that are the subject of this Motion hereinafter, the "**Debtors' Assets**"):

---

[2] Certain creditors may have liens against assets of the Debtors on personal property not subject to perfection under Article 9, as may be provided in the Debtors' Schedules or in such creditors proof(s) of claim, included titled vehicles.

| **Debtor** | **General Description of the Debtors' Assets** | **Lienholders In Order of Priority** |
|---|---|---|
| Motorcycles of Manchester, Inc. (Debtor) | Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | Personal Property (excluding property that is not subject to perfection under Article 9 of the Uniform Commercial Code ("**Article 9**"):<br>(i) Polaris;<br>(ii) Wells Fargo;<br>(iii) Polaris;<br>(iv) Yamaha;<br>(v) VW Credit;<br>(vi) MutualOne;<br>(vii) Honda;<br>(viii) Huntington;<br>(ix) Yamaha;<br>(x) MutualOne;<br>(xi) MutualOne;<br>(xii) Kawasaki Finance, and Kawasaki Motors;<br>(xiii) Northpoint;<br>(xiv) MutualOne;<br>(xv) MutualOne;<br>(xvi) Kawasaki Finance, and Kawasaki Motors;<br>(xvii) MutualOne;<br>(xviii) Wells Fargo;<br>(xix) MutualOne;<br>(xx) North Mill Credit Trust; (xxi) NH Department of Revenue Administration; and (xxii) Internal Revenue Services. |
| Wheel Freedom, LLC (Debtor) | Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | Personal Property (excluding property that is not subject to perfection under Article 9):<br>(i) Polaris, and Wells Fargo;<br>(ii) Yamaha;<br>(iii) Mutual One;<br>(iv) Kawasaki Finance, and Kawasaki Motors;<br>(v) VW Credit;<br>(vi) Honda;<br>(vii) Northpoint;<br>(viii) Huntington;<br>(ix) Honda; and<br>xi) Westlake Flooring Company, LLC |
| MOMS Northampton, LLC (Debtor) | Personal property assets, including vehicles, parts inventory, accounts and contracts (including | Personal Property (excluding property that is not subject to perfection under Article 9):<br>(i) Honda;<br>(ii) Kawasaki Finance, and Kawasaki Motors; |

| | | |
|---|---|---|
| | franchise agreements). | (iii) Yamaha; and<br>(iv) Northpoint |
| MOMS Middlesex, LLC (Debtor) | Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | Personal Property (excluding property that is not subject to perfection under Article 9):<br>(i) MutualOne;<br>(ii) Wells Fargo;<br>(iii) Yamaha;<br>(iv) Northpoint;<br>(v) Huntington; and<br>(vi) Kawasaki Finance, and Kawasaki Motors |

15. As of the date of this Motion, the Non-Debtors' Assets are as follows, including known liens against the assets (the assets of the Non-Debtor Affiliates that are being marketed as part of this sale process, the "**Non-Debtor Assets**"):

| **Non-Debtor Affiliate** | **General Description of the Non-Debtor Assets** | **Lienholders In Order of Priority** |
|---|---|---|
| Two Wheeler Holdings, LLC (Non-Debtor Affiliate) | Real property generally located at 110 Manchester Street, Concord, New Hampshire (the "**Concord Property**")<br><br>Real property generally located at 27 Polumbo Drive, Enfield, Connecticut (the "**Enfield Property**").<br><br>Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | *Concord Property*: MutualOne (mortgage 10/13/21; 12/22/22; 1/4/23; 4/21/23); Binette Realty LLC (mortgage 1/4/23, and attachment 8/25/25); PRM Auto Holdings, LLC (mortgage 2/10/26).<br><br>*Enfield Property*: MutualOne (mortgage 10/13/21; 12/22/22; 1/4/23; 4/21/23); Town of Enfield (tax lien 5/29/26)<br><br>Personal Property (excluding property that is not subject to perfection under Article 9): Small Business Association (filed 7/27/20) |
| Wheel Deal, LLC (Non-Debtor Affiliate) | Real property generally located at 216 North King Street, North Hampton, Massachusetts (the "**King Street Property**") | *King Street Property*: MutualOne<br><br>Personal Property (excluding property that is not subject to perfection under Article 9): MutualOne (filed [filed 11/3/21- lapsed]) |

| | | |
|---|---|---|
| | Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | |
| Flying Horse Realty, Inc. (Non-Debtor Affiliate) | Real property generally located at 98 Willow Street, Manchester, New Hampshire (the "**Willow Street Property**")<br><br>Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | *Willow Street Property*: (i) TruNorth Bank; and (ii) MutualOne<br><br>Personal Property (excluding property that is not subject to perfection under Article 9): No lienholders |
| MOMS North Country, LLC (Non-Debtor Affiliate) | Real property generally located at 149 State Street, Northumberland, New Hampshire (the "**State Street Property**")<br><br>Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | *State Street Property*: MutualOne<br><br>Personal Property (excluding property that is not subject to perfection under Article 9): None |
| Good Start, LLC (Non-Debtor Affiliate) | Real Property generally located at 70 Topsham Fair Mall Road, Topsham, Maine (the "**Topsham Property**")<br><br>Personal property assets, including vehicles, parts inventory, accounts and contracts (including franchise agreements). | *Topsham Property*: (i); Keith Wood and Florance Wood; and (ii) MutualOne<br><br>Personal Property (excluding property that is not subject to perfection under Article 9): MutualOne (filed 12/28/21) |

**C. The Prepetition Marketing Efforts for the Debtors' Assets and the Non-Debtor Assets.**

16. Beginning on or about March of 2026, the Debtors and the Non-Debtor Affiliates

began to market the Debtors' Assets and the Non-Debtor Assets as part of a restructuring and sale of the businesses after being approached by an existing motorsports dealer seeking to establish a presence in New England. Although a number of parcels of real property no longer necessary to the consolidated operations were listed with brokers, the marketing efforts were largely orchestrated directly by the Debtors and the Non-Debtor Affiliates.

17. These sale efforts of the businesses with this one potential buyer, despite months of negotiations could not reach agreement on the terms of the transaction and the requisite DIP Financing necessary to sustain operations. The Debtors instead worked with M1 in advance of the chapter 11 filings in an effort to solicit other alternative bidders for its business operation and real estate.

**D. Sale Carve Out**

18. Provided that current counsel for the Debtors ("**Debtors' Counsel**") are retained by orders of the Bankruptcy Court (with MutualOne reserving its rights to object to any applications to employ), MutualOne agrees to fund the reasonable and necessary fees incurred by Debtors' Counsel from the Petition Date until such time as MutualOne revokes its agreement to fund such fees. The fees of Debtors' Counsel shall include only the fees that are reasonable and necessary to represent the Debtors in the chapter 11 cases and MutualOne has the express right to object to any and all fees incurred by Debtors' Counsel. Any fees payable my MutualOne for Debtors' counsel shall be payable from the proceeds of the Sale and shall be paid only after the fees are approved by the Bankruptcy Court.

**<u>DISCLOSURES ABOUT PROPOSED SALE</u>**

19. The Debtors submit the following disclosures regarding the proposed sale of the Debtors' Assets and the Non-Debtor Assets:

| **Category** | **Disclosure** |
|---|---|
| Debtors' Assets (Subject to the Sale Motion) | The Debtors' Assets include personal property, inventory, accounts receivable, equipment, machinery, furniture, fixtures, vehicles, contracts (including franchise agreements), customer lists, marketing materials, and permits and licenses (to the extent transferable). |
| Non-Debtor Assets (Available as part of the sale process) | The Non-Debtor Assets include the real estate properties described above, and personal property, inventory, accounts receivable, equipment, machinery, furniture, fixtures, vehicles, contracts (including franchise agreements), customer lists, marketing materials, and permits and licenses (to the extent transferable). **<u>The Non-Debtor Assets shall not be subject to the jurisdiction of the Bankruptcy Court and shall not be sold pursuant to the Sale Order</u>**. |
| Value of the Debtors' Assets and the Non-Debtor Assets | To be determined through Bid Procedures.<br><br>The values allocated to the Debtors' Assets and the Non-Debtor Assets shall be set forth in the Purchase Agreement (defined below). |

## <u>SUMMARY OF BID PROCEDURES</u>

### A. The Proposed Bid Procedures

20. The Debtors, with the consent of M1, developed and seek approval of the Bid Procedures attached as **<u>Exhibit B</u>**, which contain dates and procedures for the Sale (defined below) process.

### B. Form and Manner of Notice

21. On or within two (2) business days after entry of the Bid Procedures Order, the Debtors shall cause a copy of the Bid Procedures Order, the Bid Procedures, and the Cure and Possible Assumption and Assignment Notice (defined below) to be served on the parties set forth below.

22. The Bid Procedures, and the Cure and Possible Assumption and Assignment Notice (defined below) may be amended appropriately to conform with the provisions of the Bid Procedures Order.

## C. Summary of the Assumption Procedures

23. Pursuant to the Bid Procedures Order, notice of the proposed assumption and assignment of the assumed contracts and leases, including franchise agreements, the proposed cure amounts relating thereto, and the rights, procedures, and deadlines for objecting thereto, shall be provided in separate notices, attached to the Bid Procedures Order as **Exhibit 2** (the "**Cure and Possible Assumption and Assignment Notice**") to be sent to the applicable counterparties to the assumed contracts and leases, including franchise Agreements (the "**Assumed Contract Counterparties**").

## RELIEF REQUESTED

24. By this Motion, **first**, the Debtors seek entry of the Bid Procedures Order substantially in the form filed herewith:

(a) approving the Bid Procedures Order in connection with the sale (the "**Sale**") of the Debtors' Assets;

(b) scheduling a sale hearing (the "**Sale Hearing**") with respect to the Sale;

(c) approving the form and manner of notice of the Sale;

(d) approving procedures for the proposed assumption and assignment (the "**Assumption Procedures**") of certain assumed contracts and leases of the Debtors, including franchise agreements; and

(e) granting related relief.

25. **Second**, following completion of the Bid Procedures, the Debtors intend to seek entry of the Sale Order at the Sale Hearing providing the following relief:

(a) authorizing and approving the sale of the Debtors' Assets free and clear to the Successful Bidder that the Debtors (in accordance with the Bid Procedures) determine to have submitted the highest and/or best bid for the Debtors' Assets, or, if the Successful Bidder fails to consummate the Sale, to the bidder with the next-highest or second-best bid for the Debtors' Assets (the "**Backup Bidder**") as determined by the Debtors, with the consent of M1;

(b) authorizing the assumption and assignment of proposed assumed contracts and leases, including franchise agreements, to the Successful Bidder (or Backup Bidder, as applicable); and

(c) granting related relief as set forth in the Sale Order.

## BASIS FOR RELIEF

### A. The Relief Sought in the Bid Procedures Order is in the Best Interests of the Estates and Should Be Approved.

#### *1. The Proposed Notice of the Bid Procedures and the Sale Process is Appropriate and Sufficient.*

26. The Debtors seek authority to sell the Debtors' Assets through a competitive bidding process, including a marketing process through the Broker. Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify creditors of the proposed Sale, including a disclosure of the time and place of any auction, the terms and conditions of a sale, and the deadline for filing any objections to the Sale. The Debtors respectfully submit that the Bid Procedures Order is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale. The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bid Procedures Order, coupled with the Cure and Possible Assumption and Assignment Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.

#### *2. The Bid Procedures Are Appropriate and Will Maximize Value.*

27. Bid procedures may be approved when they provide a benefit to a debtor's estate

by maximizing the value of the debtor's assets. See In re Edwards, 228 B.R. 552, 361 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). Courts have made clear that a debtor's business judgment is entitled to deference with respect to the procedures to be used in selling an estate's assets. See In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'") (internal citations omitted)); see also In re Integrated Resources, Inc., 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (bid procedures negotiated by a trustee are to be reviewed in accordance with the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

28. The Debtors submit that the Bid Procedures will establish the parameters under which the value of the Debtors' Assets and the Non-Debtor Assets may be tested. The Bid Procedures will increase the likelihood the Debtors will receive the greatest possible consideration because they will ensure a competitive and fair bidding process. Specifically, the proposed Bid Procedures contemplate minimum (but appropriate) barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid. At the same time, the proposed Bid Procedures provide the Debtors with a robust opportunity to consider competing bids and select the highest or best offer for the completion of the Sale.

**3. *The Proposed Notice Procedures for the Assumed Contracts and Leases Are Appropriate.***

29. The Sale contemplates the assumption and assignment of the assumed contracts and leases, including franchise agreements, to the Successful Bidder. The Bid Procedures specify the

process by which the Debtors will serve Cure and Possible Assumption and Assignment Notices and the procedures and deadlines for Assumed Contract Counterparties to file and serve an objection to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of an executory contract or unexpired lease.

30. Except as may otherwise be agreed, at the closing of the Sale, the Successful Bidder shall cure those defaults under the assumed contracts and leases that need to be cured in accordance with § 365(b) of the Bankruptcy Code, by payment of the undisputed cure amounts (the "**Cure Amount**"). The Debtors will determine the Cure Amounts based on a careful, good faith review of their books and records, to identify the amounts owed as of the Petition Date.

31. As set forth in the Bid Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any assumed contracts and leases, including franchise agreements, be deemed to consent to the assumption and assignment of the applicable assumed contracts and leases pursuant to § 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the Cure Amounts identified in the Cure and Possible Assumption and Assignment Notice.

## B. Approval of the Proposed Sale Is Appropriate and in the Best Interests of the Estates.

### 1. *The Sale of the Debtors' Assets Should Be Authorized Pursuant to § 363 of the Bankruptcy Code.*

32. The authority to sell assets conferred upon a debtor-in-possession by § 363(b) of the Bankruptcy Code includes the sale of substantially all the assets of an estate. See In re Coastal Cable T.V., Inc., 24 B.R. 609, 611 (B.A.P. 1st Cir. 1982) (vacated on other grounds) ("A sale of all or most of a debtor's assets may occur prior to confirmation of a plan."); Otto Preminaer Films, Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991)

("Section 363 of the Code allows a debtor to sell assets of the estate . . . including a sale of substantially all the assets of the estate."). The power to approve a sale under § 363(b) is "within the sound discretion of the trial court." Coastal Cable T.V., 24 B.R. at 611. "[A] chapter 11 debtor may sell all or substantially all its assets pursuant to section 363(b) prior to confirmation of a chapter 11 plan, when the court finds a good business reason for doing so." In re General Motors Corp., 407 B.R. 463, 491 (Bankr. S.D.N.Y. 2009); see also In re AMR Corp., 490 B.R. 158, 164 (Bankr. S.D.N.Y. 2013).

33. The Debtors satisfy the requirement that they have a "sound business purpose" for the sale of the Debtors' Assets. The Debtors considered various restructuring alternatives prior to commencing the chapter 11 cases and, since the Petition Date, have evaluated all such alternatives. After extensive negotiations with M1, and after evaluating its debt profile and various restructuring alternatives, the Debtors have determined that a sale of the Debtors Assets under § 363(b) will maximize the value of the estates for the benefit of all stakeholders. First, the Debtors believe that the Sale will maximize the Debtor's Assets' value by allowing a party to bid on the Debtors' Assets as a going concern with the opportunity to operate the Debtors' businesses as going-concerns. Second, the sale of the Debtors' Assets will be subject to competing bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Debtors' Assets. Ultimately, the Successful Bid, after being subject to a "market check" and accepted by the Debtors in the exercise of their business judgment, and consented to by M1, will constitute the highest and best offer for the Debtors' Assets, and, at this time, the Debtors believe will provide a greater recovery for the estates than any known or practically available or feasible alternative.

**2. *Adequate and Reasonable Notice of the Sale Will Be Provided.***

34. The Bid Procedures Order will: (i) be served in a manner that provides at least 21-

days' notice of the date, time, and location of the Sale Hearing following entry of the Bid Procedures Order; (ii) inform parties in interest of the deadlines for objecting to the Sale or the assumption and assignment of the assumed contracts and leases, including franchise agreements; and (iii) otherwise include all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of such notice will have been approved by this Court pursuant to the Bid Procedures Order, after notice and a hearing, before it is served on parties in interest.

**3. *The Sale and Purchase Price Will Reflect a Fair-Value Transaction.***

35. The Debtors, through the Broker, will market the Debtors' Assets and the Non-Debtor Assets and solicit offers consistent with the Bid Procedures. In this way, the number of bidders that are eligible to participate in the bidding process will be maximized.

**4. *The Sale of the Debtors' Assets Should Be Free and Clear of Claims and Interests Pursuant to § 363(f) of the Bankruptcy Code.***

36. The Debtors submit that it is appropriate to sell the Debtors' Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to § 363(f) of the Bankruptcy Code, with any such claims and interests not released at closing attaching to the net sale proceeds of the sale of the Debtors' Assets, as and to the extent applicable.

37. Section 363(f) of the Bankruptcy Code provides that:

> The trustee may sell property under § 363(b) free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "Because the language of § 363(f) is in the disjunctive, courts can approve a sale if any one of the five conditions is satisfied." BAC Home Loans Servicing LP v. Grassi, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. Nov. 21, 2011).

38. In relation to the consent requirements of § 363(f)(2), M1 consents to this Motion, and Debtors will work to obtain consents from other potential lienholders on the Debtors' Assets. Further, this Court should deem any potential lienholder or other interest holder of any type to consent to the free and clear sale under § 363(f)(2) to the extent such interest holder does not timely object to the Sale after notice thereof. See BAC Home Loans, 2011 WL 6096509, at *5 ("This Panel, as well other courts in this circuit and nationally, views silence as implied consent sufficient to satisfy the consent requirement for approving a sale under § 363(f)(2).") (citing cases); In re Colarusso, 295 B.R. 166, 175 (B.A.P. 1st Cir. 2003), aff'd, 382 F.3d 51 (1st Cir. 2004) (failure to object to the sale was consent under § 363(f)(2)).

39. In relation to the requirements of § 363(f)(3), it is anticipated that the sale of the Debtors' Assets may generate sufficient proceeds to satisfy some or all of the properly perfected, non-avoidable liens against the Debtors' Assets (based on allocation of the sale proceeds and subject to any reservation of rights regarding any such liens).

40. Under § 363(f)(4), to the extent a bona fide dispute exists as to any liens or interests, the Debtors may sell free and clear of such liens and interests, with those liens or interests attaching to the sale proceeds for future determination and allocation (if any).

41. Finally, under § 363(f)(5), this Court is empowered to authorize the sale free and

clear of any claim or interest as long as that creditor receives the value of its collateral. See In re Boston Generating, LLC, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); In re Beker Indus. Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986); In re Oneida Lake Dev., Inc., 114 B.R. 352, 356-57 (Bankr. N.D.N.Y. 1990). Interest holders, including secured creditors, could be compelled to accept a money satisfaction of their respective interests pursuant to § 363(f)(5) of the Bankruptcy Code. See, e.g., In re James, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997); In re Grand Slam U.S.A., Inc., 178 B.R. 460, 461-62 (E.D. Mich. 1995). Courts considering this issue have held that the "cramdown" provision under the Bankruptcy Code constitutes a "legal or equitable proceeding" and permits a sale under § 363(f)(5). See, e.g., Grand Slam, 178 B.R. at 464; In re Levitt & Sons, LLC, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002); Scherer v. Fed. Nat. Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.), 159 B.R. 821, 829 (N.D. Ill. 1993). Any liens against the Debtors' Assets released under § 363(f)(5), therefore, shall attach to the cash proceeds received from the sale of the Debtors' Assets in the same force, effect, and priority as such liens had prior to the closing of the Sale, subject to all rights and defenses of the Debtors or any party in interest.

### 5. *The Debtors' Assets and the Assumed Contracts Should Be Sold Free and Clear of Successor Liability.*

42. The Debtors propose that the Sale Order provide that the Successful Bidder shall not have any successor liability relating to the Debtors or the Debtors' Assets to the maximum extent permitted by law. Although § 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Courts, however, have held that a buyer of a debtor's assets pursuant to a § 363 sale takes free from successor liability resulting from pre-existing claims. See Amphenol Corp. v. Shandler

(In re Insilco Techs., Inc.), 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a § 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory). Under § 363(f) of the Bankruptcy Code, the Successful Bidder is entitled to know that the Debtors' Assets are not tainted by claims that could be asserted against the Successful Bidder after the Sale is completed (other than agreed assumed liabilities, if any). Absent that ruling, the value of the Debtors' Assets could be compromised. Accordingly, the Sale Order should state that the Successful Bidder is not liable as a successor under any theory of successor liability, for interests that encumber or relate to the Debtors' Assets.

**6. *The Sale Has Been Proposed in Good Faith and Without Collusion, and the Successful Bidder Will Be a "Good-Faith Purchaser" Entitled to the Full Protection of Bankruptcy Code § 363(m); and the Sale of the Debtors' Assets Does Not Violate Bankruptcy Code § 363(n).***

43. The Debtors request that, at the Sale Hearing, the Court find that the Successful Bidder is entitled to the benefits and protections provided by § 363(m) of the Bankruptcy Code in connection with the Sale of the Debtors' Assets.

44. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

45. Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to § 363 from the risk it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser purchased or leased the assets in "good faith." Although the Bankruptcy Code does not define "good faith," courts have held a purchaser

shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that, where there is a lack of such integrity, a good faith finding may not be made. See, e.g., Abbotts Dairies of Pa., 788 F.2d at 147 ("Typically, the misconduct that would destroy a buyer's good faith status at a judicial sale involves fraud, collusion between the proposed buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); In the Matter of Andy Frain Servs., Inc., 798 F.2d 1113 (7th Cir. 1986) (same); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

46. The Debtors anticipate that any Successful Bidder would be a "good faith purchaser" within the meaning of § 363(m) of the Bankruptcy Code. As set forth in more detail above, the consideration to be received by the Debtors pursuant to the Sale will be subject to a market process by virtue of the Debtors' marketing efforts and will be substantial, fair, and reasonable. Further, where—as the Debtors anticipate will be the case here—there is no indication of any "fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct, there is no cause that would permit the Sale to be avoided pursuant to § 363(n). Finally, the Successful Bidder's offer will be evaluated and approved by the Debtors, with the consent of M1.

47. Moreover, because there will be no fraud or improper dealing of any kind, the Sale does not constitute an avoidable transaction pursuant to § 363(n) of the Bankruptcy Code, and, as a result, the purchaser should receive the protections afforded good faith purchasers by § 363(m) of the Bankruptcy Code. Accordingly, the Debtors request that the Court make a finding at the Sale Hearing that the agreement reached with the Successful Bidder was at arm's length and is entitled to the full protections of § 363(m) of the Bankruptcy Code. The Debtors will submit evidence at the Sale Hearing to support these conclusions, as appropriate.

**C. The Assumption and Assignment of the Assumed Contracts and Leases, Including Franchise Agreements, Should Be Approved.**

48. A debtor is authorized to assume an executory contract and/or unexpired lease provided that, at the time of assumption, the debtor: (a) cures, or provides adequate assurance that the debtor will promptly cure, any default; (b) compensates, or provides adequate assurance that the debtor will promptly compensate, the counterparty for any actual pecuniary loss resulting from any default; and (c) provides adequate assurance of future performance under the executory contract or unexpired lease. See 11 U.S.C. § 365(a), (b)(1). A default based upon the filing of the bankruptcy case or the insolvency or financial condition of the debtor need not be cured. See 11 U.S.C. § 365(b)(2). The standard applied in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989).

49. In the case of an assumption and assignment, the purchaser or assignee provides the adequate assurance of future performance. See 11 U.S.C. § 365(f)(2). The Bankruptcy Code does not define the term "adequate assurance," and courts have found that "the term 'adequate assurance' was intended to be given a practical, pragmatic construction." In re DBSI, Inc., 405 B.R. 698, 708 (Bankr. D. Del. 2009). Adequate assurance is "something less than an absolute guarantee." Id. Counterparties to assumed contracts and leases will have the opportunity to object to adequate assurance of future performance by the Successful Bidder. Accordingly, the Debtors submit that the assumption and assignment of the assumed contracts and leases, including any franchise agreements, as set forth herein should be approved.

50. Here, this Court should approve the decision to assume and assign the assumed

contracts and leases in connection with the Sale as a sound exercise of the Debtors' business judgment. First, the assumed contracts and leases may be essential to inducing the best offer for the Debtors' Assets, particularly if the buyer requires the businesses to continue as going concerns. Second, it is unlikely any purchaser would want to acquire the Debtors' Assets unless the contracts and leases that generate value are transferred in the Sale. Third, the assumed contracts and leases will be assumed and assigned as part of a process approved by the Court pursuant to the Bid Procedures Order and, thus, will be reviewed by key constituents in these chapter 11 cases. Accordingly, the Debtors submit that the assumption and assignment of the assumed contracts and leases, if required by the Successful Bidder, should be approved as a sound exercise of the Debtors' business judgment.

51. To assist in the assumption, assignment, and sale of the assumed contracts and leases, the Debtors also request that the Sale Order approving the sale of the Debtors' Assets provide that anti-assignment provisions in the assumed contracts and leases shall not restrict, limit, or prohibit the assumption, assignment, and sale of the assumed contracts and leases and are deemed and found to be unenforceable anti-assignment provisions within the meaning of § 365(f) of the Bankruptcy Code. Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from such anti-assignment restrictions. The Debtors submit that the Bid Procedures Order complies with applicable law and will provide sufficient notice and opportunities to object to the assignment of the assumed contracts and leases at closing.

52. Finally, the Debtors request that they be relieved from any further liability with respect to the assumed contracts and leases after assumption and assignment to the Successful Bidder. See 11 U.S.C. § 365(k).

53. To the extent an assigned contract is not "executory" in nature under § 365 of the

Bankruptcy Code, each Debtor's interest in such proposed assigned contract will nevertheless be transferable to the purchaser as an asset of such Debtor's estate pursuant to section 363 of the Bankruptcy Code.

**D. Request for Expedited Hearing on Bid Procedures and Procedures to Assume or Assign Contracts and Leases.**

54. The Debtors request that this Court hold an expedited hearing on **November 30, 2026**, only on the requested bid procedures. The Debtors' businesses are having cashflow issues and a quick sale is required in order to maximize the value of the Debtors' Assets as operating businesses. Failure to provide an expedited hearing on bid procedures would delay all subsequent deadlines, thereby threatening the estates' value in the proposed sale process and causing irreparable harm to the Debtors and their estates, as well as to creditors that otherwise would be paid from the sale proceeds.

**E. Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

55. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that the Sale Order be effective immediately upon its entry by providing the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). To maximize the value received from the Debtors' Assets, and to ensure that the Successful Bidder is free to close the

Sale as soon as possible after entry of the Sale Order, the Debtors hereby request that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

56. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the United States Trustee for the District of New Hampshire; (ii) the holders of the 20 largest, non-insider unsecured claims against the Debtors (on a consolidated basis); (iii) Prepetition Lienholders; (iv) secured creditors of the Non-Debtor Affiliates, if known; (v) governmental and taxing authorities; (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (vii) any other parties designated in the service list by the Debtors to receive notice (the "**Notice Parties**").

57. The Debtors will also serve a copy of the Bid Procedures Order, the Bid Procedures, and the Cure and Possible Assumption and Assignment Notice on (i) the Notice Parties; (ii) all parties that have executed an NDA for the Debtors' Assets; (iii) any other known governmental agencies with an interest in the Sale and transactions proposed thereunder; (iv) all other parties known or reasonably believed to have asserted an interest in the Debtors' Assets; (v) the Assumed Contract Counterparties; and (vi) the Debtors' insurance carriers.

58. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court: (i) enter the Bid Procedures Order; (ii) enter the Sale Order at the Sale Hearing; and (iii) grant such other and further relief as is just and proper.

Respectfully submitted,

**MOTORCYCLES OF MANCHESTER, INC., *ET. AL.*,**

*/s/ Peter J. Nicosia*

Peter J. Nicosia, Esq. NH Bar #14922
NICOSIA & ASSOCIATES, PC
259 Middlesex Rd.
Tyngsboro, MA 01879
Tel: (978) 649-4300
Email: nicosia@nicosia-associates.com

***Proposed co-counsel and local counsel for the Debtors***

*/s/ Alan L. Braunstein*

Alan L. Braunstein, Esq.
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street
Boston, Massachusetts 02114
Tel: (617) 880-3516
Email: abraunstein@riemerlaw.com

***Proposed bankruptcy counsel for the Debtors***

DATED: November 20, 2026